Jennifer Estremera (SBN 251076)
jestremera@reichmanjorgensen.com
Laura Carwile (SBN 291906)
lcarwile@reichmanjorgensen.com
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
Fax: (650) 560-3501

Adam Adler (*pro hac vice*)
aadler@reichmanjorgensen.com
1909 K Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 894-7310
Fax: (650) 560-3501

Attorneys for Plaintiff
EVOX PRODUCTIONS, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOX PRODUCTIONS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>LEMBERG LAW LLC, a Connecticut limited liability company; and SERGEI LEMBERG, an individual,<br><br>Defendants. | Case No. 2:21-cv-07875 SSS (AGR)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)**<br><br>Honorable Judge Sunshine S. Sykes<br>Honorable Magistrate Judge Alicia G. Rosenberg<br><br>Trial Date:  July 29, 2024 |

# **TABLE OF CONTENTS**

**Page**

I.   **Background** ...................................................................................... 2

    A. EVOX ............................................................................................ 2

    B. Defendants Sergei Lemberg and Lemberg Law LLC ................................ 3

    C. "Units of Publication," "Group Registrations," and EVOX's Disclosures to the Copyright Office ............................................................................. 3

II.   **The Court Should Deny Defendants' Motion for Judgment on the Pleadings** ............................................................................................. 4

    A. The Asserted Images Are Copyrighted. .................................................. 6

    B. Access Is Not a Required Element, But Regardless, Can Be Inferred from the Complaint. ................................................................................... 7

    C. EVOX Has Standing. ........................................................................ 9

III.   **The Court Should Deny Defendants' Motion to Invalidate EVOX's Copyrights.** ......................................................................................... 11

    A. Standards Governing Referrals to the Copyright Office Under § 411 ...... 11

    B. Defendants Have Failed to Establish That EVOX's Applications Contained Any Inaccuracies. .................................................................. 13

        1.   EVOX Never Claimed To Have Physical Goods ............................. 13

        2.   Each Work in the UOP Registrations Has the Same Publication Date. ............................................................................................. 15

        3.   EVOX Published Its Images In "Single Units." ............................. 17

        4.   Defendants' "Novelty" Argument Is Improper and Incorrect.......... 18

        5.   EVOX Did Not Register Unpublished Images. ............................... 19

        6.   Copyright Regulations Allow EVOX To Obtain Group Registrations Involving Multiple Photographers. ........................... 19

        7.   EVOX Images *Is* EVOX Productions. ........................................ 19

8.   Ownership Issues ................................................................20

    i.  Defendants' "Ownership" Challenge Is Procedurally Improper and
        Does Not Fit Within the § 411(b)(2) Framework. ...........................20

    ii. EVOX Owns Each of the Asserted Group Registrations, Since Each
        Photo Was Taken By an EVOX Employee Acting in the Scope of
        Employment. ......................................................................21

    C.  Defendants Have Failed To Prove Fraudulent Intent. ...............................22

IV.   **Conclusion** ...............................................................................**25**

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ayala v. U.S. Xpress Enters., Inc.*,
   2019 WL 6179553 (C.D. Cal. Oct. 15, 2019) ......................................................... 17

*Bakalian v. Cent. Bank of Republic of Turkey*,
   932 F.3d 1229 (9th Cir. 2019) ............................................................................. 5

*Baxter v. MCA, Inc.*,
   812 F.2d 421 (9th Cir. 1987) .............................................................................. 8

*Cohen v. Paramount Pictures Corp.*,
   845 F.2d 851 (9th Cir. 1988) ............................................................................. 18

*DeliverMed Holdings, LLC v. Schaltenbrand*,
   734 F.3d 616 (7th Cir. 2013) ............................................................................. 12

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) .............................................................................. 9

*Evox Prods. LLC v. Cal. Rent-A-Car, Inc.*,
   2016 U.S. Dist. LEXIS 194720 (C.D. Cal. July 26, 2016) ................................. 18

*Evox Prods. LLC v. Kayak Software Corp.*,
   2017 WL 5634856 (C.D. Cal. Jan. 20, 2017) ..................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................... 1, 8, 18

*Fourth Estate v. Pub. Benefit Corp.*,
   139 S. Ct. 881 (2019) ....................................................................................... 9

*Gallion v. Charter Commc'ns Inc.*,
   287 F. Supp. 3d 920 (C.D. Cal. 2018) ........................................................... 5, 11

*Gamma Audio & Video, Inc. v. Ean-Chea*,
   11 F.3d 1106 (1st Cir. 1993) ............................................................................. 7

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ........................................................................... 5

*Jamison Bus. Sys. Inc. v. Unique Software Support Corp.*,
  2005 WL 1262095 (E.D.N.Y. May 26, 2005) .......................................................... 8

*Jones v. L.A. Cent. Plaza LLC*,
  74 F.4th 1053 (9th Cir. 2023) ................................................................................ 5

*Loomis v. Cornish*,
  836 F.3d 991 (9th Cir. 2016) ................................................................................. 8

*Marya v. Warner/Chappell Music, Inc.*,
  131 F. Supp. 3d 975 (C.D. Cal. 2015) ................................................................. 11

*Metro Pub., Ltd. v. San Jose Mercury News*,
  987 F.2d 637 (9th Cir. 1993) ............................................................................... 10

*Orr v. Bank of Am.*,
  285 F.3d 764 (9th Cir. 2002) ............................................................................... 11

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  188 F. Supp. 3d 347 (S.D.N.Y. 2016) ................................................................. 12

*Parker v. Cnty. of Riverside*,
  78 F.4th 1109 (9th Cir. 2023) ................................................................................ 5

*Platte River Ins. Co. v. P & E Automation, Inc.*,
  2013 WL 12123688 (C.D. Cal. June 19, 2013) .................................................... 10

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) ............................................................................................. 11

*Studio S Imports, LLC v. Deutsch Imports, LLC*,
  2021 WL 3598571 (C.D. Cal. June 21, 2021) ...................................................... 10

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
  692 F.3d 1009 (9th Cir. 2012) .............................................................................. 21

*Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*,
  52 F.4th 1054 (9th Cir. 2022) ........................................................................*passim*

*Unicolors, Inc. v. H&M Hennes & Mauritz L.P*,
  595 U.S. 178 (2022) .......................................................................................*passim*

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
  630 F.3d 1255 (9th Cir. 2011) ....................................................................... 11, 20

*Universal Dyeing & Printing, Inc. v. Knitwork Prods. II, LLC*,
  2019 WL 2613448 (C.D. Cal. June 26, 2019) .............................................. 12, 20

*VHT, Inc. v. Zillow Grp., Inc.*,
  69 F.4th 983 (9th Cir. 2023) ................................................................... 9

*Williams v. Savage Servs. Corp.*,
  2020 WL 13328483 (C.D. Cal. Oct. 7, 2020) ........................................... 9

*Woods v. Bourne Co.*,
  60 F.3d 978 (2d Cir. 1995) ...................................................................... 20

*Zavala v. Kruse-W., Inc.*,
  562 F. Supp. 3d 1059 (E.D. Cal. 2021) .................................................... 10

**Federal Statutes**

17 U.S.C. § 101 .......................................................................................... 6, 21

17 U.S.C. § 201 .......................................................................................... 9

17 U.S.C. § 409(8) .................................................................................... 16

17 U.S.C. § 410(c) ..................................................................................... 11, 20

17 U.S.C. § 411 ......................................................................................... *passim*

17 U.S.C. § 501 (1976) ............................................................................. 9

35 U.S.C. § 102(a) .................................................................................... 18

**Rules**

FRCP 12 ..................................................................................................... 1, 5, 9

FRCP 56 ..................................................................................................... 1, 5, 6

FRCP 201 ................................................................................................... 9

**Regulations**

37 C.F.R. § 202.3(b)(3) (1981) .................................................................. 4

37 C.F.R. § 202.3(b)(4) ............................................................................. *passim*

72 Fed. Reg. 36883 (2007) ....................................................................... 14

82 Fed. Reg. 45625, 45627 n.8 ...................................................................... 6

83 Fed. Reg. 2542 at 2546 ........................................................................... 19

84 Fed. Reg. 22762, 22763 (2019) ................................................................ 6

84 Fed. Reg. 66328 ..................................................................................... 24

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office
     Practices (2014) ............................................................... 4, 14, 16, 24

U.S. Copyright Office, Compendium of U.S. Copyright Office
     Practices (2017) ............................................................................... 4

U.S. Copyright Office, Compendium of U.S. Copyright Office
     Practices (2021) ............................................................................ 6, 7

1       Defendants filed a summary judgment motion in Rule 12(c) and 17 U.S.C. §

2   411(b) clothing. While Defendants cast their motion as one for judgment on the

3   pleadings or for referral to the Copyright Office, the motion relies on dozens of

4   exhibits, as well as a statement of facts masquerading as an attorney "declaration."

5   Defendants ask the Court to find facts and reach conclusions regarding copyright

6   authorship, ownership, date of publication, the level of creativity in the asserted

7   works, standing, infringement, and registration validity, among others. Needless to

8   say, these matters are not appropriate for resolution through judgment on the

9   pleadings or through a motion for referral to the Copyright Office. However, should

10  the Court consider Defendants' extrinsic evidence, the Court should convert the

11  motion to one for summary judgment, deny the motion in view of the factual

12  disputes, and prohibit Defendants from filing another Rule 56 motion.

13      In addition to its procedural deficiencies, Defendants' motion takes the

14  shotgun approach of asserting *eleven* grounds for case-dispositive relief, each of

15  which is either objectively frivolous or fails on the merits. For example, Defendants

16  claim that the asserted copyrights are invalid because they "lack novelty." But

17  "novelty" is expressly *not* a requirement for copyright eligibility. *Feist Publ'ns, Inc.*

18  *v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991) ("[N]ovelty is not required."). As

19  another example, Defendants' claim that EVOX's registrations cannot cover

20  multiple works, despite Supreme Court caselaw stating the opposite. *Unicolors, Inc.*

21  *v. H&M Hennes & Mauritz L.P*, 595 U.S. 178, 182 (2022) ("[A] single registration

22  can cover multiple works.").

23      Defendants' arguments also turn on an incorrect or incomplete understanding

24  of the facts. For example, three of Defendants' arguments are based on the notion

25  that EVOX's copyright applications contain an incorrect publication date. But the

26  document on which Defendants rely for the "correct" publication date does not

27  mean what Defendants think it means. As another example, Defendants claim that

28  EVOX's copyrights are registered to an entity that "does not exist," but they ignore

1   the fact that the name on the registration is EVOX's registered D/B/A.

2       Once one carves through the objective errors in Defendants' motion, the only

3   items that remain (if any) turn on factual disputes. The Court should deny

4   Defendants' motion outright. Alternatively, the Court should convert Defendants'

5   motion to one for summary judgment, deny the motion, and enter an order

6   precluding Defendants from filing a second motion for summary judgment.

7   **I.   Background**

8   **A. EVOX**

9       EVOX is the leading source of automotive industry photos in North America.

10  For the last 20 years, EVOX has created and licensed high-quality photo, video, and

11  interactive automotive imagery. Its library contains nearly two million unique

12  images and videos, and is one of the best quality and most comprehensive of its kind

13  in the United States. Thompson Decl. ¶ 5. This library includes pictures of over

14  9,000 makes and models of cars that have been sold in the United States from the

15  year 2000 to the present. *Id.* EVOX offers its works digitally, and publishes all of its

16  works online. *Id.* ¶ 6. Each image in the library was created as a work-for-hire by an

17  EVOX employee or agent. *See id.* ¶¶ 7-13. To protect its investment and valuable

18  intellectual property, EVOX has registered over 11,000 copyrights over the images

19  in its library. *Id.* ¶ 14.

20      Given the large number of registrations, EVOX has for years been in direct

21  communication with the Copyright Office regarding the status of EVOX's

22  applications and appropriate procedures to use for registrations. Ex. G (Pardau Tr.)

23  at 41:3-43:3; 44:1-22; 55:13-63:6; Exs. A, B, C, D, E, F, H, I, L. As part of this

24  contact, the Copyright Office provided EVOX with specific instructions about its

25  registration forms and worked with EVOX to identify the procedures that EVOX

26  should use to register each of its images. *Id.* EVOX also worked with the Copyright

27  Office to make sure it was aware of any changes in the rules or procedures

28  governing its registrations, and sought guidance in advance of those changes to

1   ensure that it remained in compliance with the Copyright Office's practices. *Id.*

2   **B. Defendants Sergei Lemberg and Lemberg Law LLC**

3   Defendant Sergei Lemberg ("Lemberg") is an attorney who owns and

4   operates Lemberg Law LLC (collectively with Lemberg, "Defendants"), a law firm

5   in Wilton, Connecticut. In late 2020, EVOX determined that Defendants were

6   displaying over 150 of its copyrighted images without permission. To make matters

7   worse, EVOX observed that Defendants were using EVOX's images to solicit

8   litigation against EVOX's critical business partners.

9   EVOX demanded Defendants remove the infringing images and compensate

10  EVOX for their unlawful use. Defendants refused. On October 1, 2021, EVOX filed

11  suit alleging copyright infringement and DMCA violations for 154 images. In

12  discovery, EVOX discovered additional violations, bringing the total number of

13  infringed images up to 167.

14  **C. "Units of Publication," "Group Registrations," and EVOX's Disclosures**
15     **to the Copyright Office.**

16  Since at least 2007, EVOX has worked closely with the Copyright Office to

17  be in compliance with the Office's rules regarding copyright applications and to

18  identify procedures that could be used to streamline EVOX's registration process.

19  *See, e.g.*, Dkts. 291-16, 291-19.

20  In 2011, the Copyright Office instructed EVOX to register its works as a

21  "single unit of publication" [hereinafter 'UOP']. Ex. G at 58:8-17; Ex. A. The term

22  "unit of publication" was devised by the Copyright Office to provide applicants (like

23  EVOX) with the ability to register multiple works using a single application.

24  *Unicolors*, 595 U.S. at 182 ("[a] single [UOP] registration can cover multiple

25  works") (citing 37 C.F.R. § 202.3(b)(4)).[1]

---

26       [1] The regulation authorizing UOPs went into effect in 1981 and has not since been
27  amended. The regulation states that "all copyrightable elements that are otherwise recognizable as
28  self-contained works, that are included in a single unit of publication, and in which the copyright

In 2014, the Copyright Office issued a new compendium of practices that included more detailed requirements for UOP registrations. Compendium, Dec. 22, 2014.[2] The Copyright Office confirmed that EVOX's works were still eligible for the UOP option. Ex. B at 1 ("[T]he business model used by EVOX allows [the U.S. Copyright Office] to consider these claims as units of publication… [EVOX] can continue submitting [its] claims as [it] ha[s] in the past.").

In late 2017, the Copyright Office narrowed its interpretation of UOP to exclude works that are published digitally. *Compare* 2014 Compendium at 494 § 803.8(H) (UOP option available for works distributed as "a package of files for digital download") *with* 2017 Compendium[3] at 628 § 1107.1 (listing "works first published online" as an example of works that cannot be registered as a UOP). In the following months, the Copyright Office provided instructions regarding how EVOX should file its applications to account for the new rules and determined what EVOX needed to do to bring its then-pending UOP applications into compliance. Specifically, the Copyright Office instructed EVOX to register its images as a "Group of Published Photographs [hereinafter 'GPP']." EVOX complied with those instructions. Ex. C; Ex. D; Ex. E; Ex. F (explaining that the Copyright Office would "walk-through the process that ensures [EVOX is] correctly filing" its applications); Ex. G at 62:13-63:6; 135:23-136:10.

## II.    The Court Should Deny Defendants' Motion for Judgment on the Pleadings.

"Judgment on the pleadings is proper when, taking all the allegations in the

---

claimant is the same" can be registered through a single application. 37 C.F.R. § 202.3(b)(4). While the relevant regulatory language has not changed, at the time of its introduction, the relevant language was located at 37 C.F.R. § 202.3(b)(3) (1981).

[2] The 2014 Compendium is available at https://www.copyright.gov/comp3/docs/compendium-12-22-14.pdf (last accessed Feb. 12, 2024).

[3] The 2017 Compendium is available at https://www.copyright.gov/comp3/2017version/docs/compendium.pdf (last accessed Feb. 12, 2024).

1   pleadings as true, the moving party is entitled to judgment as a matter of law."

2   *Parker v. Cnty. of Riverside*, 78 F.4th 1109, 1112 (9th Cir. 2023); FRCP 12(c).

3   When resolving a motion for judgment on the pleadings, the Court must construe the

4   facts in the light most favorable to the non-moving party, and must draw all

5   reasonable inferences in favor of the non-moving party. *Parker,* 78 F.4th at 1112;

6   *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1233 (9th Cir. 2019).

7        "In deciding a motion for judgment on the pleadings, the court generally is

8   limited to the pleadings and may not consider extrinsic evidence." *Gallion v.*

9   *Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 924 (C.D. Cal. 2018); FRCP 12(d).

10   When a 12(c) motion relies on matters outside the pleadings, the "court may [either]

11   choose to exclude such extrinsic matters, or it may convert the motion into one for

12   summary judgment under Rule 56." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053,

13   1059 (9th Cir. 2023) (internal quotations omitted).

14        Thus, courts may consider extrinsic evidence *only if* it treats the motion for

15   judgment on the pleadings as a motion for summary judgment. FRCP 12(d) (the

16   motion "must be treated as one for summary judgment under Rule 56"); *Hal Roach*

17   *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

18        Defendants' motion for judgment on the pleadings relies on the declaration of

19   Sergei Lemberg, which falls squarely outside the pleadings. Dkt. 291 ("Def. Mot.")

20   at 4-5 (citing to ¶¶ 7-9 of the declaration, Dkt. 291-1). Moreover, the cited portions

21   of the declaration quote from and refer to additional material outside the pleadings.

22   *Id*. (citing to ¶ 8 of Dkt. 291-1, which quotes from discovery responses).

23        Because Defendants' motion presents matters outside the pleadings, the Court

24   should convert Defendants' motion to a motion for summary judgment and prohibit

25   Defendants from filing an additional summary judgment motion without first

26   obtaining leave to do so.[4]

27   _____

28   [4] *See* Civil Standing Order of United States District Judge Sunshine S. Sykes at § VIII.F

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

Alternatively, should the Court decline to treat Defendants' motion as one for summary judgment, then the Court must disregard all extrinsic materials and consider only the pleadings themselves.[5] Defendants assert three bases for judgment on the pleadings: the asserted images are "not protected by the copyright"; EVOX failed to allege that Defendants had access to EVOX images; and lack of standing. Defendants are wrong as to each.

## A. The Asserted Images Are Copyrighted.

Defendants argue that the UOP copyright certificates cover "the unification of ... images, not the images themselves."[6] Defendants are mistaken.

UOP registrations cover multiple works, each of which is individually protected. *Unicolors*, 595 U.S. at 182 ("[a] single [UOP] registration can cover multiple works") (citing 37 C.F.R. § 202.3(b)(4)); *Unicolors, Inc. v. H&M Hennes & Mauritz L.P.*, 52 F.4th 1054, 1068 (9th Cir. 2022) ("[A] single unit of publication refers to separately copyrightable works ... ."); 84 Fed. Reg. 22762, 22763 (2019) ("A registration issued under this option covers each work in the unit that is owned by the copyright claimant."); 82 Fed. Reg. 45625, 45627 n.8 ("[UOP] provides a means for registering multiple works with one submission."); Compendium, Jan. 28,

---

("No party may file more than one (1) motion pursuant to Federal Rule of Civil Procedure 56, regardless of whether such motion is denominated a motion for summary judgment or summary adjudication, without leave of the Court.").

[5] In the event the Court finds judgment on the pleadings is warranted—which it is not, for the reasons discussed at length below—EVOX respectfully requests leave to amend its pleading. *See* Civil Standing Order of United States District Judge Sunshine S. Sykes at § VIII.A ("Even after a complaint has been amended or a responsive pleading has been served, the Federal Rules of Civil Procedure provide that leave to amend should be 'freely given when justice so requires.'").

[6] It appears Defendants have confused the concept of UOP (an administrative classification to streamline copyright registrations) with the concept of compilations. *Compare* 17 U.S.C. § 101 ("A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.") *with* 2021 Compendium § 1103 ("A unit of publication is also different from a collective work in that the unit is not a compilation of works, but rather a package of separate and distinct copies[.]").

2021 ("2021 Compendium")[7] § 511 (applicants can use "the unit of publication option" to "register multiple works with one application"), § 1101 (same), § 1103 ("A registration issued under [the UOP] option covers each work in the unit that is owned by the copyright claimant.").

In arguing otherwise, Defendants misread the pertinent regulation. The relevant rule states that "*[f]or the purpose of registration on one application ... [a UOP] shall be considered one work.*" 37 C.F.R. § 202.3(b)(4) (emphasis added). Defendants ignore the italicized language and conclude that UOPs shall be considered a single work *for all purposes*. Thus, in Defendants' view, a plaintiff cannot assert infringement or seek damages for any of the individual works included in a Unit of Publication. Def. Mot. at 3-4 ("[T]he images ... are not covered by the Copyright Certificates."). This reading is contrary to the law, the plain meaning of the regulation, and the purpose of the UOP rule. *See, e.g.*, *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 & n.8 (1st Cir. 1993) ("Under regulations promulgated by the Copyright Office, the copyrights in multiple works may be registered on a single form, and thus considered one work *for the purposes of registration,* while still qualifying as separate 'works' for purposes of awarding statutory damages.") (emphasis in original) (quoting UOP regulation).

The Ninth Circuit's post-remand decision in *Unicolors* considered a completely different question: what items can be **registered** as a single unit of publication. In fact, in the same opinion, the Court made clear that each single work within a UOP may be individually infringed, as is the case here. 52 F.4th at 1068 ("a single unit of publication refers to separately copyrightable works...").

### B. Access Is Not a Required Element, But Regardless, Can Be Inferred from the Complaint.

---

[7] The 2021 Compendium can be found at: https://www.copyright.gov/comp3/ (last accessed Feb. 15, 2024).

1    Defendants seek judgment on the pleadings, arguing EVOX "failed to

2    sufficiently plead allegations of access" to support its claim of copying. Def. Mot. at

3    4. Defendants misstate the law. To state a claim for copyright infringement,

4    plaintiffs must prove the defendant copied their work. *Feist Publ'ns, Inc. v. Rural*

5    *Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Copying can be proved through direct

6    evidence or through circumstantial evidence. *Baxter v. MCA, Inc.*, 812 F.2d 421,

7    423-24 (9th Cir. 1987); *see also Loomis v. Cornish*, 836 F.3d 991, 994 (9th Cir.

8    2016).

9    In the absence of direct evidence, the plaintiff must provide circumstantial

10   evidence to show that the defendant copied the infringed work and did not simply

11   create it independently. *Id.* at 995. Evidence of "access" is only one of many ways

12   for plaintiffs to make out a circumstantial case of copying. *See, e.g.*, *Baxter*, 812

13   F.2d at 423-24 ("Absent evidence of access, a 'striking similarity' between the

14   works may give rise to a permissible inference of copying."). Put another way,

15   "access" is not an element of copyright infringement and need not be separately

16   alleged. Instead, the question of access is only implicated "[a]bsent direct evidence

17   of copying," and even then, only if other methods of circumstantial evidence of

18   copying are not available. *Loomis*, 836 F.3d at 994 (emphasis added); *Jamison Bus.*

19   *Sys. Inc. v. Unique Software Support Corp.*, 2005 WL 1262095, at *9 (E.D.N.Y.

20   May 26, 2005).

21   EVOX's complaint alleges copying. Dkt. 1 ("Complaint"). Specifically, the

22   Complaint alleges that Defendants copied and displayed "authentic EVOX images,"

23   that the images "were EVOX's copyrighted works," and that Defendants displayed

24   images bearing EVOX's logo. Complaint ¶¶ 4-5, 17, 19. Further support for the

25   allegation of copying is in Exhibit A to the Complaint, which shows the images

26   alleged to have been displayed on Defendants' website are *identical* to the original

27   images. These allegations more than satisfy the plausibility requirement for

28   "copying."

### C. EVOX Has Standing.

Finally, Defendants seek judgment on the pleadings "on Copyright Certificates." Def. Mot. at 4-5. Defendants' argument is incoherent. Judgment on the pleadings is entered with respect to *claims*. FRCP 12(c). There is no such thing as judgment "on certificates." On closer inspection, it appears that Defendants' argument is actually that EVOX "has no standing" to assert registrations that list "EVOX Images" as the claimant, on the purported ground that "EVOX Images" does not exist. Def. Mot. at 5.

Defendants are doubly wrong. *First*, standing under the Copyright Act is determined by ownership, rather than registration. "Section 501(b) of the Copyright Act of 1976 establishes who has standing to sue for infringement." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 982-83 (9th Cir. 2017). Under the statute, "[t]he ... ***owner*** of an exclusive right under a copyright is entitled ... to institute an action for any infringement." 17 U.S.C. § 501(b) (emphasis added). Ownership of a work "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).[8] Thus, the question of ownership is distinct from that of registration. *See Fourth Estate v. Pub. Benefit Corp.*, 139 S. Ct. 881, 887 (2019) (ownership exists "apart from registration"); *VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 987 (9th Cir. 2023). The Complaint alleges that EVOX created and owns the asserted copyrights. Complaint ¶¶ 1, 13, 14. Thus, the Complaint adequately alleges standing.

*Second*, Defendants' assertion that EVOX Images is a "non-existing entity" is incorrect. "EVOX Images" is just an alternate name for EVOX Productions LLC. In fact, EVOX registered EVOX Images as a D/B/A in California in 2011, and again in 2023. Ex. M (2011); Ex. N (2023).[9]

---

[8] An employer is considered the author of works created by employees within the scope of their employment. 17 U.S.C. § 201(b).

[9] D/B/A registrations fall under the purview of documents for which the Court may take judicial notice under FRCP 201. *Williams v. Savage Servs. Corp.*, 2020 WL 13328483, at *3 (C.D.

The use of a fictitious name or D/B/A "does not create a separate legal entity." *Platte River Ins. Co. v. P & E Automation, Inc.*, 2013 WL 12123688, at *4 (C.D. Cal. June 19, 2013). Thus, companies are allowed to register copyrights using a D/B/A. *See Studio S Imports, LLC v. Deutsch Imports, LLC*, 2021 WL 3598571, at *1, *3 & n.2 (C.D. Cal. June 21, 2021).

In addition to the D/B/A registrations themselves, the fact that "EVOX Images" is just an alternate name for EVOX Productions can reasonably be inferred from the Complaint. Dkt 1 ¶ 19 ("EVOX was able to discover this infringement in part because EVOX's images display information that identif[ies] EVOX as the copyright owner, including the phrase '© EVOX IMAGES.'"). The fact is further corroborated by registered trademarks, showing that EVOX Productions, LLC owns and has the exclusive right to use the EVOX IMAGES name. Ex. O (Trademark Reg. No. 4149683); Ex. P (Trademark Reg. No. 3649661).[10]

In view of the above, the Court should deny Defendants' motion outright. However, in the event the Court is not persuaded, and if the Court decides to convert the motion to one for summary judgment, the motion should still be denied on the basis that there is a large body of evidence outside the pleadings that confirms that EVOX Images and EVOX Images LLC are simply alternate names for EVOX Productions LLC.[11]

---

Cal. Oct. 7, 2020) (court taking judicial notice of a Fictitious Business Name Statement from the Los Angeles County Registrar-Recorder/County Clerk, establishing a D/B/A). Upon taking such judicial notice, the Court may consider them in its judgment on the pleadings. *Zavala v. Kruse-W., Inc.*, 562 F. Supp. 3d 1059, 1064 (E.D. Cal. 2021) ("When deciding a motion for judgment on the pleadings, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice.").

[10] The Court may take judicial notice of registered trademarks. *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 & n.3 (9th Cir. 1993). The Court may then consider these exhibits in its judgment on the pleadings. *Zavala*, 562 F. Supp. 3d at 1064.

[11] This evidence includes witness statements (*e.g.*, Ex. Q at 10:24-11:1, 11:16-20 ("Q: And where were you employed prior to 2020? A: At Evox Images. ... Q: When you say Evox Images, is that the same company as Evox Productions, LLC? A: Yes."); deposition testimony (*e.g.*, Ex. G

Defendants do not offer any evidence for their claim that EVOX Images does not exist. Instead, all they provide is an assertion—offered through a self-serving declaration—that Mr. Lemberg was unable to find records relating to EVOX Images. Dkt. 291-1 ¶¶ 7, 9. Needless to say, the Court cannot consider these assertions, whether in a pleadings posture, *see Gallion*, 287 F. Supp. 3d at 924 (court cannot look outside pleadings), or on conversion to summary judgment. *See Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

## III. The Court Should Deny Defendants' Motion to Invalidate EVOX's Copyrights.

### A. Standards Governing Referrals to the Copyright Office Under § 411

The Copyright Act "generally requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 154 (2010). A copyright registration is prima facie evidence of ownership and validity, and creates a presumption as to those issues in plaintiffs' favor. 17 U.S.C. § 410(c); *see also United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) ("A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'"). Once a claimant shows that it has a certificate of registration, the burden of proof shifts to the opposing party who must "offer some evidence or proof to dispute or deny the plaintiff's prima facie case." *Id*. at 1257; *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 985 (C.D. Cal. 2015) (same).

Defendants can rebut that presumption by showing that the registration was obtained fraudulently. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 188 (2022). To do so, Defendants must show:

---

at 124:1-4 ("EVOX Images is a DBA of EVOX Productions, LLC")); e-mail correspondence with the Copyright Office (*e.g.*, Ex. R); employment agreements (*e.g.*, Ex. Z (filed under seal)); and customer-facing technical documents (*e.g.*, Ex. BB at 1 (filed under seal)).

(1) the applicant submitted inaccurate information to the Copyright Office;

(2) the applicant knew the information was inaccurate, and had an intent to deceive or defraud the copyright office, and;

(3) the inaccuracy was material, such that "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

17 U.S.C. § 411(b)(1); *Unicolors*, 52 F.4th at 1067. Under the statute, the Court may not, in the first instance, pass on the materiality of any alleged inaccuracy. Instead, the Court must refer questions of materiality to the Copyright Office. 17 U.S.C. § 411(b)(2).

While referrals to the Copyright Office can be helpful in certain cases, courts have recognized that the procedure can be abused by litigants, who may seek to use a referral to delay litigation and stall proceedings. *Universal Dyeing & Printing, Inc. v. Knitwork Prods. II, LLC*, 2019 WL 2613448, at *6 (C.D. Cal. June 26, 2019) ("The Court recognizes that this procedure is 'vulnerable to abuse' and that other courts have urged caution in its use."); *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) ("Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future."); *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (same).

To guard against this abuse, courts generally require Defendants to prove the first two elements *prior* to referring cases to the Copyright Office. *See, e.g.*, *Unicolors*, 595 U.S. at 182 (vacating Ninth Circuit's referral where defendant failed to show knowledge of inaccuracy sufficient to prove fraud on the Copyright Office); *DeliverMed*, 734 F.3d at 625 ("[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality."); *Universal Dyeing*, 2019 WL 2613448, at *6 (a referral to the Copyright Office "need not be sought immediately" − instead, "courts can 'demand that the party seeking invalidation first

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

1  establish that the other preconditions to invalidity [under 17 U.S.C. § 411(b)(1)(A)]

2  are satisfied before obtaining the Register's advice on materiality'").

3         The purpose of the referral procedure is to keep copyright infringers from

4  benefitting from good-faith mistakes by the copyright owner. As the Supreme Court

5  explained in *Unicolors*, 595 U.S. at 187:

> [S]ome defendants in copyright infringement cases had 'argued ... that a
> mistake in the registration documents, such as checking the wrong box on the
> registration form, renders a registration invalid and thus forecloses the
> availability of statutory damages.' Congress intended to deny infringers the
> ability to 'exploi[t] this potential loophole. ... Given this history, it would
> make no sense if § 411(b) left copyright registrations exposed to invalidation
> based on applicants' good-faith misunderstandings of the details of copyright
> law.

**B. Defendants Have Failed to Establish That EVOX's Applications
    Contained Any Inaccuracies.**

**1. EVOX Never Claimed To Have Physical Goods.**

Defendants argue that EVOX "falsely claimed that the materials to be
registered were packaged together and distributed to the public in physical form."
Def. Mot. at 7. Defendants are wrong. *None* of EVOX's registrations state that the
works were distributed in physical form. Ex. T (EVOX's UOP registrations); Ex. U
(EVOX's GPP registrations). To the contrary, the record shows that EVOX
expressly informed the Copyright Office that EVOX publishes its works digitally.
Ex. H (EVOX explaining that its images are published online via ftp); Ex. B ("[T]he
business model used by EVOX allows us to consider these claims as units of
publication."); Ex. C (Copyright Office acknowledging that EVOX's works were
"electronic or digital fixations"); Ex. F (Copyright Office acknowledging that
EVOX's works are "digital/online"); Ex. G at 61:4-16, 138:9-139:1 (EVOX
informed the Copyright Office that, among other things, "EVOX images are offered

1   in digital form over the internet").[12] There is no inaccuracy.

2       Separately, Defendants argue that, under the applicable copyright rules (i.e.,

3   the rules in effect when EVOX filed its UOP applications), digital goods could not

4   qualify as "units of publication." In other words, Defendants claim that EVOX's

5   application contained a legal inaccuracy by improperly designating its works as a

6   UOP. *See* Def. Mot. at 7. This argument misconstrues the pertinent rules and

7   regulations. The 2017 Compendium did, for the first time, prohibit the use of UOP

8   registrations for digital goods – which is why EVOX switched from UOP to GPP

9   registrations. Exs. T (UOP), U (GPP). However, the compendia from prior to 2017

10  confirmed that the UOP option was available for works distributed as "a package of

11  files for digital download." 2014 Compendium at 494 § 803.8(H). This policy was

12  expressly validated by leaders from the Copyright Office, who instructed EVOX to

13  use the UOP designation, and who repeatedly confirmed that EVOX's works

14  qualified as UOP, including after the 2014 Compendium went into effect. *See supra*

15  at 2-4 (summarizing Copyright Office guidance); Ex. G. at 76:20-78:24 (confirming

16  that EVOX received instructions from the head of the Audiovisual and Photography

17  Division of the Copyright Office).

18      In arguing that EVOX's registrations required physical goods, Defendants

19  rely on the physical deposit requirement from the Second Edition of the Copyright

20  Compendium, first published in 1984. Def. Mot. at 8. For obvious reasons, the 1984

21

22      [12] Defendants assert that "Evox never advised the Copyright Office in writing that its

23  materials exist only in digital form." Def. Mot. at 9 (citing Ex. G at 82:12-19, 99:20-100:2). But
    Defendants mislead the Court. Mr. Pardau's full answer in the first citation (Ex. G at 81:10-85:14)

24  makes clear that Mr. Pardau testified only that he could not identify, in a voluminous record,
    individual emails responsive to Defendants' question. And the second cite on which Defendants

25  rely (*id.* at 99:20-100:2) explicitly includes Mr. Pardau's testimony that "[a]t the present moment,
    I can't identify [a specific document] for you," not that such documents do not exist. Emails with

26  the Copyright Office that clearly identify EVOX's works as "digital/online" have been produced.
    Exs. F, B, C. Finally, deposition questions asking a witness to identify a document from memory

27  among thousands, which the witness is unable to do, are improper and regardless cannot form the
    basis for bald assertions to the Court that no such documents exist.

28

Compendium did not address the submission of digital deposits, which have long since become the norm at the Copyright Office. *See* 72 Fed. Reg. 36883 (2007) (creating rules to allow for digital submissions and digital deposits).[13] In other words, the fact that the 1984 Compendium did not contemplate digital works does not make EVOX's applications (submitted over 30 years later) somehow inaccurate.

Defendants' reliance on the 1984 Compendium (or the 2017 Compendium for requirements for UOPs) highlights a more general problem regarding Defendants' mode of argument. As the 2017 Compendium itself recognizes, "[t]he *Compendium* does not override any existing statute or regulation," and "[t]he policies and practices set forth in the *Compendium* do not ... have the force and effect of law and are not binding upon ... Copyright Office staff." 2017 Compendium at 2. Importantly, the UOP regulation does not prohibit digital goods. 37 C.F.R. § 202.3(b)(4). Because the compendia do not represent the final word, Defendants' (mistaken) interpretations do not render EVOX's applications inaccurate.

**2. Each Work in the UOP Registrations Has the Same Publication Date.**

Defendants argue that EVOX provided inaccurate information regarding the date its images were published. Def. Mot. at 9-10. According to Defendants, "[t]he 'publication date' [on EVOX's registrations] differs from the actual publication date of images at issue." *Id.* Defendants have simply misinterpreted an EVOX document.

EVOX customers have two options for licensing EVOX images. Thompson Decl. ¶¶ 15-16. The first option is for customers to subscribe to EVOX's Automotive Image Library (AIL).[14] *Id.* ¶ 15; Ex. BB at 2 (filed under seal). Under this option, customers are entitled to use a set of licensed materials from the AIL,

---

[13] The same year that these digital submission rules were created, the Copyright Office asked EVOX to be one of the first registrants to use the new "electronic Copyright Office" (eCO) to submit its applications, *see* Ex. K, and was expressly instructed EVOX to submit digital deposits, *see* Ex. L ("[W]e can't complete the examination process because an electronic copy of the material you wish to register was not attached to your claim.").

[14] *See* Ex. AA at 7 (filed under seal).

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

and are given access credentials to an FTP server (the "Evox Portal FTP Server") that facilitates quick and easy access to the images. *Id*. The second option is for customers to license on an image-by-image basis (i.e., a la carte). Thompson Decl. ¶ 16. A la carte customers purchase a license through one of EVOX's websites (EVOXStock.com) and, upon purchase, receive an email with a download link to the licensed image. *Id.*

EVOX publishes images to its library-wide licensees first, and makes images available for a la carte purchase at a later date by uploading the images to a separate FTP server associated with EVOXStock.com. *Id.* ¶ 17. Per the Copyright Act, 17 U.S.C. § 409(8), EVOX uses the date of *first* publication when applying for copyrights (i.e., the date its images were made available to the Evox Portal FTP Server). *See* Exs. T, U; *see also* 2014 Compendium § 612.6. In its records, EVOX refers to the first date of publication as "dateDelivered," and refers to the later EVOXStock publication date as "dateWebUploaded." Thompson Decl. ¶ 19 & Ex. 1; *see also* Ex. BB at 11-12 (filed under seal) (describing Date Delivered field). Defendants misinterpreted the "dateWebUploaded" field and mistook the date of publication on EVOXStock as the date of first publication.

On reflection, it is easy to see where Defendants went wrong. During one of the depositions in this case, Defendants asked EVOX witness Barry Thompson[15] to describe the "dateWebUploaded" field. Mr. Thompson accurately testified that the field corresponds to the date the images are published, Ex. S (Thompson Tr.) at 201:6-9, and provided additional testimony indicating that the document was used in connection with EVOXStock, *id.* at 169:2-5 ("[I]t's used by EVOX stock to organize the images."). Defendants elected not to inquire or clarify further. Instead, they simply *assumed* there was only one date of publication. Defendants also opted not to ask Mr. Thompson (or any other EVOX witness) about the perceived

---

[15] Mr. Thompson is EVOX's VP of Compliance.

Case No. 2:21-cv-07875 SSS (AGR)

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

1  discrepancy between the "dateWebUploaded" field and the publication dates

2  identified in EVOX's registrations. Had they done so, Mr. Thompson would have

3  resolved the discrepancy and obviated any confusion.[16] *Cf. Ayala v. U.S. Xpress*

4  *Enters., Inc.*, 2019 WL 6179553, at *6 (C.D. Cal. Oct. 15, 2019) ("[Defendants']

5  failure to recognize the alleged importance of [EVOXStock] and failure

6  to ask follow-up questions cannot be held against [EVOX].").[17]

7  **3. EVOX Published Its Images In "Single Units."**

8  Defendants claim that EVOX did not distribute its images as a "single unit,"

9  and that "the 'single units' [identified in EVOX's registrations] existed only for

10  purposes of registration." Once again, Defendants are incorrect. EVOX *did*

11  distribute its images in a single package—EVOX assembled all of the images

12  associated with a vehicle model, and made each of the images available to its

13  Automotive Image Library customers at the same time. *See* Ex. V; Ex. S at 159:22-

14  160:10, 202:14-24, 204:17-205:1 (images "are released in a group for the images

15  that we shot of the car").

16  The deposition testimony cited by Defendants is not to the contrary. The

17  testimony simply confirms that EVOX does not think of its products as "units of

18  publication," but rather in terms of commercial realities and market demand. *See id.*

19  at 164:6-19 ("It's not a product. I don't sell it. There's no value. It's a title."). And

20  for good reason. The term "unit of publication" is a legal term of art that has no

21

22

23  [16] Defendants' decision not to ask other EVOX witnesses about the perceived date discrepancy is notable, since Mr. Thompson was not designated to provide testimony regarding

24  the "dateWebUploaded" document in the first place. Ex. S at 166:2-14 (parties acknowledging a standing objection to scope with respect to the document containing the "dateWebUploaded"

25  field); *id.* at 192:11-15 (reiterating scope objection after a break). In addition, Defendants asked the correct 30(b)(6) witness, Alex McClain, detailed questions regarding the document, but

26  inexplicably opted *not* to ask him about the dateWebUploaded field.

27  [17] On review of the transcript, Mr. Thompson realized the potential for confusion and included a clarification in his errata to highlight the distinction between the Evox Portal FTP

28  Server and EVOXStock. *See* Ex. W (Errata for Barry Thompson Deposition).

discernible or practical meaning beyond the copyright regulations.[18]

Defendants also claim that EVOX improperly created its "units" for purposes of registration. Not so. EVOX has published all images of the same car on the same date (in a single "unit") since at least 2004 – several years before EVOX started using the UOP form of registration.[19] Thompson Decl. ¶ 18.

### 4. Defendants' "Novelty" Argument Is Improper and Incorrect.

Defendants argue that EVOX's UOP registrations are not valid "because they lack novelty." Def. Mot. at 11. Instead of seeking referral on this issue under § 411, Defendants appear to seek summary adjudication (they do not identify an inaccuracy in EVOX's registration, nor do they allege knowledge or fraudulent intent).

Defendants' novelty argument is simply a repackaged version of Defendants' motion for judgment on the pleadings; Defendants again confuse UOP registrations as a registration for "selection and arrangement." *See id*. As explained above, this argument is wrong. *Supra* at 2-4. EVOX's UOP registrations cover each of the works specifically identified in its registrations. EVOX has not claimed copyright over the "unification" of those works, nor in the "arranging [of] digital files in alphabetical order," as Defendants suggest. Def. Mot. at 11.

As to the images themselves, there is no serious question regarding copyright eligibility. Contrary to Defendants' assertion, there is no "novelty" requirement.[20]

---

[18] Defendants' use of this deposition testimony confirms the problems with their questions. Instead of asking Mr. Thompson about the *facts* underlying the "unit of publication" designation, Defendants asked Mr. Thompson to testify as to the meaning and application of "unit of publication," only to turn around and use his ignorance of the term as a "gotcha" smoking gun. EVOX timely objected to the questions to avoid exactly this scenario. *See* Ex. S at 27:2-10, 164:6-11 (objections).

[19] Separately, EVOX disputes the suggestion that it is somehow improper for registrants to make business decisions based on the rules regarding copyright registration, including decisions regarding how and when to publish creative works. *See Unicolors*, 52 F.4th at 1070.

[20] It appears Defendants have confused copyrights with patents. *See* 35 U.S.C. § 102(a) ("Novelty"). As for the "originality" requirement relating to copyrights, courts have repeatedly found EVOX images to be sufficiently original and creative as a matter of law. *See Evox Prods.*

1  *Feist*, 499 U.S. at 358 ("[N]ovelty is not required."); *Cohen v. Paramount Pictures*

2  *Corp.*, 845 F.2d 851, 854 (9th Cir. 1988) ("The essence of a copyright protection is

3  the protection of originality rather than novelty or invention.") (quotation omitted).

4  **5.   EVOX Did Not Register Unpublished Images.**

5  Defendants claim that 29 of the asserted registrations are invalid because they

6  were filed before EVOX published its images. Def. Mot. at 12. This argument is

7  based on the same mistaken interpretation of the "dateWebUploaded" field

8  described above. *See supra* at 15-17. As explained above, the "dateWebUploaded"

9  data does not correspond to the date on which EVOX images were first published.

10  **6.   Copyright Regulations Allow EVOX To Obtain Group Registrations Involving Multiple Photographers.**

11

12  Defendants claim that one can only obtain a GPP registration if each photo in

13  the group "[was] taken by the same individual." Def. Mot. at 12 & n.17. Defendants

14  are mistaken, as they rely on copyright rules that have since been modified.

15  Specifically, on January 18, 2018, the Copyright Office issued a formal rule

16  explaining that "photographs can be included in one group even if they were created

17  by different employees, as long as the photographs were created by the same author

18  as works for hire." 83 Fed. Reg. 2542 at 2546. This rule post-dates the authority on

19  which Defendants rely. Def. Mot. at 12 & n.17 (relying on 2017 Compendium).

20  Defendants do not claim there is in an inaccuracy or lack of compliance with

21  respect to the revised rule, *id.*, nor could they. *See* Thompson Decl. ¶¶ 7-13 (each

22  photographer was EVOX employee); Ex. X (McClain Tr.) at 114:24-115:6 (same).

23  **7.   EVOX Images *Is* EVOX Productions.**

24  Defendants ask the Court to refer this case to the Copyright Office based on

25  their belief that the claimant on several of the applications (EVOX Images LLC)

26  "does not exist." Def. Mot. at 13-14. Defendants' position simply repeats the

27  _____

28  *LLC v. Kayak Software Corp.*, 2017 WL 5634856, at *4-7 (C.D. Cal. Jan. 20, 2017); *Evox Prods. LLC v. Cal. Rent-A-Car, Inc.*, 2016 U.S. Dist. LEXIS 194720, at *22-27 (C.D. Cal. July 26, 2016).

argument asserted in their motion for judgment on the pleadings, and should be rejected for the same reasons. *See supra* at 9-11.

### 8. Ownership Issues

### i. Defendants' "Ownership" Challenge Is Procedurally Improper and Does Not Fit Within the § 411(b)(2) Framework.

Defendants' final basis for referral relates to issues of ownership. Defendants claim that EVOX "cannot show that it properly acquired copyright [sic] from the artists and photographers who created the images." Def. Mot. at 2, 16. But a § 411 referral to the Copyright Office cannot be based on an alleged *lack* of evidence. To the contrary, to prevail on their referral motion, *Defendants* must provide evidence to show that information contained in EVOX's registration is inaccurate, and that EVOX knew about the inaccuracy. *Supra* at 11-13; *Universal Dyeing*, 2019 WL 2613448, at *6. Defendants have not identified any such evidence (nor can they do so for the first time in reply).

Defendants' "cannot show" argument amounts to a premature request for summary judgment of no-ownership. Even there, however, their argument fails, since possession of a valid copyright registration is *prima facie* evidence of ownership and validity. 17 U.S.C. § 410(c); *United Fabrics*, 630 F.3d at 1257. To rebut this presumption, defendants must "offer some evidence or proof" that undermines the claim of ownership. *Id.* Simply asserting that that there is "no evidence" is not sufficient. *Id.* at 1257-58 ("By repeatedly mentioning that United provided 'no evidence,' we are skeptical that Macy's understands that it bears the burden of providing 'some evidence' ... ."). [21] Regardless, § 411(b) is not an

---

[21] Defendants claim—incorrectly—that EVOX bears the initial burden of proof regarding ownership as a work-for-hire. Def. Mot. at 15. Defendants' cited case does not support that proposition. Instead, it speaks to the burden of proof regarding the right of reversion and the derivative works doctrine. *Woods v. Bourne Co.*, 60 F.3d 978, 994 (2d Cir. 1995). In any event, an 18-years-old out-of-circuit case cannot supersede the plain text of the statute or binding Ninth Circuit law. 17 U.S.C. § 410(c); *United Fabrics*, 630 F.3d at 1257-58 ("United did not have to

1   appropriate vehicle for the Court to consider these issues.

2   **ii. EVOX Owns Each of the Asserted Group Registrations, Since Each Photo Was Taken By an EVOX Employee Acting in the Scope of Employment.**

4      The record confirms that EVOX owns the asserted images as works-for-hire.
5 *See, e.g.*, Ex. U at EVOX00002075 ("Work made for hire: Yes"). Under the
6 Copyright Act, an employer owns the copyright to any works created by employees
7 in the course of their employment. 17 U.S.C. § 101; *U.S. Auto Parts Network, Inc. v.*
8 *Parts Geek, LLC*, 692 F.3d 1009, 1014-15 (9th Cir. 2012).

9      To determine whether a work was made in the "scope of employment," courts
10 apply general "agency principles," and consider whether the work (a) "is of the kind
11 [the employee] is employed to perform," (b) occurs substantially within the
12 authorized time and space limits," and (c) is "actuated, at least in part, by a purpose
13 to serve the [employer]." *Parts Geek*, 692 F.3d at 1015.

14      Defendants have not identified any evidence that rebuts the presumption of
15 ownership. To the contrary, the record confirms that EVOX owns the copyrights to
16 the asserted images, as the record shows that each image was taken by an EVOX
17 employee acting in the scope of their employment, in accordance with specific
18 instructions and specifications provided by EVOX.[22]

19      The sworn statement of Barry Thompson (EVOX's Vice President of
20 Compliance) further confirms that each of the three "agency" factors is satisfied
21 here. Thompson Decl. ¶¶ 4-13. Specifically, Mr. Thompson confirms that (1) the
22 employees who took the pictures were employed specifically to take the asserted

---

24 produce any evidence [of ownership]. As the copyright claimant, United is presumed to own a
25 valid copyright.").

26    [22] *See* Def. Mot. at 16 (referencing EVOX employment agreements), Dkt. 293-4
(interrogatory response describing the process used to create EVOX images). There is additional
27 supporting evidence as well. *See* Thompson Decl.¶¶ 7-13; Ex. X at 114:24-115:6 (photographers
are EVOX employees), 29:9-11 (photographers use EVOX equipment), 96:1-97:4 (EVOX's
28 creative director "developed the processes and the shot list" used to create EVOX images).

images and ones like it, (2) the images were taken using EVOX cameras, lighting, and other equipment, (3) the images were created at EVOX's expense, (4) the employees did not have discretion to deviate from EVOX's instructions or protocols, and (5) each of the images was taken on EVOX property during EVOX's standard business hours and in accordance with EVOX's standard procedures for image creation. Thompson Decl. ¶¶ 5-12.[23]

The only work on EVOX images performed by a non-employee is undertaken by a contractor who has expressly agreed that its contributions are provided as a work-for-hire, and expressly disclaimed any copyright interest in EVOX images. Dkt. 293-6 at § 6.2. In view of that agreement, there is no basis to challenge EVOX's ownership of the asserted images.

**C. Defendants Have Failed To Prove Fraudulent Intent.**

A party seeking to refer a case to the U.S. Copyright Office under § 411(b)(2) must provide evidence showing that the copyright holder "perpetrated fraud on the Copyright Office." *Unicolors*, 52 F.4th at 1067. It is not enough to show that the copyright holder provided inaccurate information to the Copyright Office. Instead, the party seeking invalidation must show that the applicant had knowledge of the inaccuracy and provided the inaccurate information with an *intent to deceive*. *Id.* Defendants cannot meet this onerous standard. *See Unicolors*, 595 U.S. at 183, 187.

---

[23] Defendants fault EVOX for "fail[ing] to identify" each of the dozen-plus employees somehow involved (however remotely) in the production process for each of the 150+ asserted images. *See* Def. Mot. at 16. This argument again misstates the parties' respective burdens. As the holder of a valid copyright certificate, EVOX is presumed to be the owner of the asserted registrations, and need not produce any additional evidence.

Despite their criticism, Defendants fail to mention that they expressly limited their discovery requests to a limited set of EVOX photographers, given the marginal relevance of their request. *See* Audio Recording of Mar. 7, 2023 Discovery Hearing at 1:07:20-1:07:35 ("THE COURT: So you're saying you want the agreements ... just with the person who took the photograph? COUNSEL FOR DEFENDANTS: I'll limit it to that. Yes."), 1:05:52-1:06:12 (counsel for Defendants agreeing that they were *not* requesting "the work for hire agreement for every person who works for Evox who touched that image or had something to do with the creation of that image").

Defendants do not have any direct evidence showing that EVOX was aware of any alleged inaccuracies. Accordingly, Defendants seek to prove fraudulent intent through circumstantial evidence. *See* Def. Mot. at 6, 17-19. These efforts fall short.

*First*, instead of showing that EVOX sought to evade Copyright rules, the record shows that EVOX made a concerted effort to apprise the Copyright Office of the facts pertinent to its registrations and routinely sought guidance from the Office to confirm that its applications were proper. *Supra* at 2-4, 13-15. Over the course of these discussions, the Copyright Office instructed EVOX to use the UOP designation and confirmed that EVOX's works continued to be eligible, even after rule changes. *Id*. The same is true with respect to EVOX's GPP registrations. In 2018, when the Copyright Office changed its policies to preclude UOP registration for digital works, the Copyright Office informed EVOX of the change and instructed EVOX to file future applications using the GPP option. *Id*.

EVOX's years' long, sustained effort to work with the Copyright Office reflects a genuine desire to follow the rules. It cannot be considered fraudulent to seek, obtain, and follow the Copyright Office's instructions regarding registration.

*Second*, the rules that form the basis for Defendants' alleged inaccuracies are notoriously complex and difficult to navigate. In *Unicolors II*, the Ninth Circuit explained why these difficulties essentially preclude a finding of willful blindness with respect to the UOP-related issues:

> [O]ur prior ruling on the proper interpretation of "a single unit of publication" ... was the first binding precedent in the Circuit on the matter. It is hardly unreasonable to conclude that [Plaintiff] could not have knowingly violated our interpretation of the relevant regulation before we announced it. Although "willful blindness may support a finding of actual knowledge," *Unicolors*, 142 S. Ct. at 948, this case does not present a context where [Plaintiff] has taken a legal position that egregiously misapplies a clear statute.

*Unicolors*, 52 F.4th at 1069-70. These difficulties are further compounded by the fact that the relevant compendia either did not meaningfully interpret the UOP

1  regulation, *see id.* (explaining that 1988 Compendium "did not provide meaningful

2  guidance"), or contained language that expressly approved of UOP registrations for

3  digital goods, *see* 2014 Compendium at 494 § 803.8(H) (UOP option available for

4  works distributed as "a package of files for digital download"). Questions

5  regarding publication date and work-for-hire status are similarly murky, and leave

6  significant room for error, even for sophisticated registrants. *Unicolors*, 52 F.4th at

7  1070 (citing 84 Fed. Reg. 66328); *see also Unicolors*, 595 U.S. at 185. These

8  uncertainties preclude a finding that EVOX was aware of any of the alleged

9  inaccuracies. *See id.* ("Given that ... the issue was truly unsettled at the time ... we

10  can draw a sensible inference that [EVOX] did not know that its [applications]

11  would run afoul of the single unit requirement."). *Unicolors*, 52 F.4th at 1069.

12      *Third*, the facts surrounding the "EVOX Images" registrations show that the

13  use of "EVOX Images" was not fraudulent. The relevant facts are set forth in the

14  declaration of Philip Hsueh, the EVOX employee responsible for filling out and

15  certifying the relevant applications. Hsueh Decl. ¶¶ 1, 5. Mr. Hsueh (a non-lawyer)

16  explains that he did not believe there was a relevant distinction between EVOX

17  Productions LLC and EVOX Images, since he believed (correctly) that EVOX

18  Images was simply an alternate name for the same company. *Id.* ¶¶ 4-8. The

19  declaration further confirms that Mr. Hsueh did not use the alternate name to

20  deceive the Copyright Office or otherwise obtain any kind of registration

21  advantage, and that Mr. Hsueh believed (and still believes) this information

22  contained in the applications is correct. *Id.* at ¶¶ 7-8. This is consistent with

23  testimony from other EVOX employees—including EVOX's CEO—that EVOX

24  frequently refers to itself as EVOX Images. *Supra* at fn. 9; Ex. Y, David Falstrup

25  Tr. 12:9-14 ("It's another name for the same company."). These facts preclude a

26  finding of fraudulent intent.

27      Defendants do not engage with the relevant facts. Instead, they simply assert

28  that the applicable rules were "clear," and ask the Court to *infer* knowledge and

intent. Def. Mot. at 20. Such an inference would run afoul of *Unicolors*, which requires "actual, subjective awareness," rather than constructive knowledge under a "should have known" standard. *Unicolors*, 142 S. Ct. at 185-86. Defendants' requested inference is further improper in view of EVOX's years' long efforts to understand and comply with the pertinent regulations. *See supra* at 2-4, 13-15.

## IV.   Conclusion

For the foregoing reasons, the Court should deny Defendants' motions in their entirety. In the alternative, the Court should convert Defendants' motion to one for summary judgment, should deny Defendants' motion with prejudice, and should preclude Defendants from filing a second motion for summary judgment.


DATED:  February 16, 2024          Respectfully Submitted,


/s/ *Laura Carwile*
Laura Carwile
Jennifer Estremera
Adam Adler
REICHMAN JORGENSEN
LEHMAN & FELDBERG LLP
Attorneys for Plaintiff

OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of February, 2024, I electronically served the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 12(c) AND 17 U.S.C. § 411(b) with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties, including to the person listed below:

Trinette Gragirena Kent                    Attorneys for Defendants
1100 West Town and Country Road
Suite 1250
Orange, AZ 92868
480-247-9644
Fax: 480-717-4781
Email: tkent@lemberglaw.com

Sergei Lemberg
Lemberg Law LLC
43 Danbury Road, 3rd Floor
Wilton, CT 06897
203-653-2250
Email: slemberg@lemberglaw.com

Vlad Hirnyk
Lemberg Law LLC
43 Danbury Road 3rd Floor
Wilton, CT 06897
203-653-2250
Email: vhirnyk@lemberglaw.com


/s/ *Laura Carwile*
Laura Carwile